IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| VOLUNTARY DISCLOSURES IN ) | Case No. 7:14-cr-00029-MFU |
| FIFTY-FIVE CLOSED CASES ) | |

**NEWSPAPER'S MEMORANDUM IN SUPPORT OF PETITION
FOR LEAVE TO INTERVENE AND OPPOSE SEALING MOTION**

BH Media Group, Inc., publisher of *The Roanoke Times* ("Petitioner" or the "Newspaper"), by counsel, submits this memorandum in support of its petition for leave to intervene in this proceeding for the limited purpose of opposing Detective Craig Frye's *Motion To Seal Exhibits Attached To His Reply In support Of His Motion To Intervene* [Dkt. No. 44]. This memorandum addresses the Newspaper's right to intervene and explains why Det. Frye's sealing motion should be denied.

**BACKGROUND**

On or about April 30, 2018, the United States moved for the entry of an order authorizing the voluntary disclosure of potential impeachment information concerning Det. Frye, a task force officer employed by the Vinton Police Department, to defense counsel in fifty-five closed cases in which Det. Frye served as a case agent, provided testimony, appeared in court, or in which he was a potential witness if the case had gone to trial. (*See Motion For Voluntary Disclosure of Grand Jury And Other Materials Pursuant To Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972), For Limitations On Further Disclosure, And For Appointment Of the Federal Public Defender*, Dkt. No. 32.)

On or about May 3, 2018, Det. Frye moved for leave to intervene in the fifty-five cases "for the limited purpose of ensuring that the recently filed U.S. Attorney's Motion to voluntarily

disclose certain information to the Federal Public Defender's Office would be limited to legitimate Brady/Giglio material – and not include demonstrably false and defamatory allegations about him or sensitive, personal financial information that is completely irrelevant to his credibility." (*See Motion To Intervene*, Dkt. No. 33 at 1.)  In support of his motion, Det. Frye argued that he "unquestionably has an interest preventing the release of false and repudiated allegations of professional conduct" and requested "an opportunity to be heard" to prevent "the unjustified release of fictitious or irrelevant personnel documents." (*See id.* at 6, 8.)

      Both the Federal Public Defender and the United States opposed Det. Frye's motion for leave to intervene. (*See The Federal Public Defender's Opposition To Craig Frye's Motion To Intervene*, Dkt. No. 38, and *United States' Response In Opposition To Craig Frye's Motion To Intervene*, Dkt. No. 40).  On or about May 14, 2018, Det. Frye filed a reply brief in support of his motion. (*See Detective Frye's Reply In Support Of Motion To Intervene*, Dkt. No. 43.)  Det. Frye argued that "due process" demanded that he be allowed to intervene to vindicate a "constitutional right . . . in his continued employment" and defend against "career-destroying allegations." (*Id.* at 1-2.)  Det. Frye's reply brief sought to describe the "atmosphere" in which the "decision to destroy [his] career" was made. (*See id.* at 5; *see generally*, *id.* at 5-26.)  Det. Fyre asserted numerous allegations of improper conduct by public officials in the performance of their public duties.  In sum, Det. Frye avers that in response to criticism from officers about a Special Assistant United States Attorney, the United States Attorneys' Office "began using its power to declare ATF agents as Giglio-impaired as a weapon to 'beat them into submission.'" (*See id.* at 6) (quoting Ex. 1, Tr. of Grievance Hr'g, Mar. 7, 2018).  Det. Frye claims that he is an innocent victim of the USAO's "vendetta." (*Id.*)

Det. Frye attached nineteen (19) exhibits (the "Exhibits") to his reply brief. Despite identifying most of them and, moreover, quoting them extensively in his brief, Det. Frye requested that the Court seal all 19 Exhibits. (*See Craig Frye's Motion To Seal Exhibit's [sic] Attached To His Reply In Support Of His Motion To Intervene*, Dkt. No. 44.)

On or about May 16, 2018, following oral argument, the Court entered three orders. The first granted the United States' motion to voluntarily disclose potential impeachment information about Det. Frye. (*See* Order, Dkt. No. 54.) The second order denied Det. Frye's motion for leave to intervene. (*See* Order, Dkt. No. 55). The third order addressed Det. Frye's motion to seal the Exhibits to his reply brief. (*See* Order, Dkt. No. 56.) The Court took Det. Frye's motion under advisement and directed Det. Frye to file a brief in support of his motion on or before June 4, 2018. (*Id.* at ¶ 4.) The Court ordered further that "[a]ny party wishing to respond to the motion to seal" shall file a response brief on or before June 11, 2018. (*Id.*)

On or about June 5, 2018, a day after the deadline imposed by the Court, Det. Frye filed a *Brief In Support Of His Motion To Seal Exhibits Attached To His Reply In Support Of His Motion To Intervene*. (*See* Dkt. No. 72, Case No. 7:12-cr-00058-MFU) (copy attached as Exhibit A). For the reasons stated below, Det. Frye's sealing motion should be denied, and the Exhibits should be made available to the public for inspection and copying.

## ARGUMENTS AND AUTHORITIES

**I.      The Newspaper Has Standing To Intervene And Oppose the Sealing Motion.**

The standing of the public, including the news media, to intervene in a civil proceeding to oppose a motion to seal judicial records is well established. *See* W.D. Va. Gen. R. 9(b)(4) ("Any person or entity, whether a party or not, may object to a motion to seal a document …."). *See also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 (1982) ("[R]epresentatives of the

press and general public 'must be given an opportunity to be heard on the question of their exclusion.'") (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401 (1979) (Powell, J., concurring); *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 262-263 (4th Cir. 2014) ("This Court has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order.") (citations omitted).  Therefore, the Newspaper should be allowed to intervene for the limited purpose of opposing Det. Frye's sealing motion.

**II.**     **Det. Frye's Sealing Motion Should Be Denied.**

    **A.**     **The Public's Qualified Right Of Access To the Exhibits Is Derived From Both the Common Law and the First Amendment.**

Det. Frye correctly observes that the 19 Exhibits attached to his reply brief are judicial records to which the public has a presumptive right of access. *Doe*, 749 F.3d at 265 ("It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings.") (citation omitted); *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (holding that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights.").  Det. Frye is also correct that as the proponent of the sealing motion, he bears the burden of overcoming this presumption. *See Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).  Det. Frye mistakenly assumes, however, that the public's right of access is derived from the common law only, and not the First Amendment as well. (*See* Ex. A at 1.)

"When presented with a sealing request, our right-of-access jurisprudence requires that a district court first determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." *Doe*, 749 F.3d at 266

(internal quotations and source omitted). "The distinction between the rights of access afforded by the common law and the First Amendment is significant because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment. Consequently, the common law does not provide as much access to the press and public as does the First Amendment." *Virginia Dep't of State Police*, 386 F.3d at 575 (internal quotations and sources omitted). The common law presumes a right of public access to inspect and copy all judicial records and documents, "but this presumption can be rebutted if the public's right of access is outweighed by competing interests." *In re Application*, 707 F.3d at 290 (quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir.1984)). By contrast, "the First Amendment provides a right of access only to *particular* judicial records and documents, and this right yields only in the existence of a 'compelling governmental interest that is narrowly tailored to serve that interest.'" *Id.* (emphasis in original and quoting *Virginia Dep't of State Police*, 386 F.3d at 575). Ultimately, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it may be abrogated only in unusual circumstances." *Virginia Dep't of State Police*, 386 F.3d at 576 (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)).

"The test for determining whether a first amendment right of access is available is: 1) 'whether the place and process have historically been open to the press and general public,' and 2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (quoting *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–10 (1986)). The test is sometimes called the "experience and logic" test. *See In re Application*, 707 F.3d at 291. Det. Frye's motion to intervene meets both prongs. *See id.*, 707 F.3d at 291 ("[Fourth Circuit] precedent makes clear

5

that both the experience and logic prongs are required."). *See also Press–Enterprise Co.*, 478 U.S. at 9 ("If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches.").

Nothing in case law from the Fourth Circuit (or any other Circuit) suggests that proceedings or records relating to a motion to intervene have historically been closed to the public.[1] To the contrary, as the cases cited in Section I above show, motions to intervene are the preferred procedural mechanism for non-parties to vindicate the public's right of access.[2] It would be nonsensical for the courts to choose intervention as the appropriate procedure for asserting public access if the attendant proceedings and records were historically hidden from public view.

Logically, proceedings and records concerning a motion to intervene should be open. The process of seeking intervention does not inherently require secrecy to operate properly. *Compare Goetz*, 886 F.2d at 64 (no First Amendment right of access to search warrant affidavit because the "proceeding for issuing a search warrant is necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove the evidence.") (quoted source omitted); *see also Press-Enterprises Co.*, 478 U.S. at 8–9 ("Although

---

[1]  Undersigned counsel was able to locate a few cases in which a party requested that its motion to intervene be sealed, only one of which involved a situation similar to Det. Frye's request. *See United States v. Jones*, Case No. 306CR149, 2007 WL 4358227 (E.D. Tenn. Dec. 13, 2007). In *Jones*, an ATF agent sought leave to intervene in a criminal matter purportedly to protect the officer's "constitutional rights" relating to a *Giglio* disclosure. *See id.* at *1. The trial court denied the motion to seal the intervention motion without discussing the public's right of access, basing its decision instead on the agent's inability to show "good cause" under Rule 16(d)(1) of the Federal Rules of Criminal Procedure, and on mootness. *See id.*

[2]  The Supreme Court of Virginia has likewise determined that "[i]ntervention is necessary to give substance to the qualified right of access[.]" *Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 590, 281 S.E.2d 915, 923 (1981).

many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly."). Rather, as in other presumptively open proceedings, access to motions to intervene helps the public understand the reviewing court's ruling and, moreover, helps legitimize the decision. *See Doe*, 749 F.3d at 266 ("Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness.") (quoted source omitted).[3] This positive role of access is all the more significant in this case, where a third-party claims his participation is necessary to curb alleged governmental abuses of power that could have far-reaching consequences that directly affect the public – the potential loss of a veteran police officer and vacatur of over fifty criminal convictions. Public access protects the judicial process from claims of complicity in the activities alleged by Det. Frye, however meritorious or unmeritorious they may be, and more generally it helps the public better understand the net result of the United States' disclosure. Thus, the First Amendment, and not just the common law, demands that the public have at least the presumptive right to access all information submitted to influence the Court's decision on whether to allow Det. Frye to join these proceedings.

      **B.     Det. Frye's Privacy Interests Are Insufficient To Overcome the Public's Qualified Right of Access.**

Because the public's qualified right of access to Det. Frye's motion to intervene and accompanying Exhibits is derived from both the common law and the First Amendment, Det. Frye must satisfy a more demanding standard to justify sealing the Exhibits. Det. Frye must

---

[3] While advocating that the Exhibits be sealed, Det. Frye acknowledges generally that "[t]he public should have a strong understanding of how its court systems work, including the

7

show that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." *In re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986) (internal quotations and citation omitted). Det. Frye fails to meet this standard. Indeed, even applying the less stringent common law standard, Det. Frye fails to identify even a "countervailing" interest that "heavily" outweighs the public's strong interest in accessing the Exhibits. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (setting forth sealing standard based on common law right of access).

Det. Frye characterizes the Exhibits as "employee files" and claims he has a privacy interest in preventing the public dissemination of their content. (Ex. A at 1-2.) Det. Frye has substantially diluted his purported privacy interest, however, in at least two ways. First, the Exhibits were filed by Det. Frye himself, not some other party. Hence, the cases cited in Det. Frye's supporting memorandum are inopposite. *See Guessford v. Pennsylvania Nat'l Mut. Cas. INS. Co.*, 2014 WL 12594127 (M.D.N.C. Sept. 30, 2014) (motion by party-employer to seal personnel records pertaining to non-party employees); *Nettles v. Farmers Ins. Exch.*, 2007 WL 858060 (W.D. Wash. Mar. 16, 2007) (same and observing that "[s]uch information is private to the individuals involved, *who have not sought to place that private information in the public sphere*.") (emphasis added). Det. Frye then forfeited what little privacy interest might have remained by supplying extensive details and quotations from the Exhibits in his reply brief.

Second, Det. Frye admits that he filed the Exhibits "solely to give this Court a complete picture – where it had only been given a partial and one-sided account – of the facts underlying the U.S. Attorney's decision to not use him as a government witness." (*See* Ex. A at 3.) In other

---

opportunity to review the source documents underlying judicial decisions." (*See* Ex. A at 2.)

words, the Exhibits were intended to publish a self-serving narrative, not bolster Det. Frye's legal arguments. Det. Frye's suggestion that he was "forced" to file the Exhibits, therefore, is a non-starter. (*See id*.)

Fundamentally, Det. Frye cannot claim much of a privacy interest, if any, in information that he voluntarily filed with the Court for gratuitous purposes. By contrast, the public's interest in accessing the Exhibits is plainly compelling. The public's interest in accessing judicial proceedings and records is always significant in cases involving allegations of governmental wrongdoing. The public's interest is even greater here, given the potential that the alleged wrongdoing could lead to the dismissal of a police officer and the release of numerous convicted felons. Access to the Exhibits in particular will not only help the public understand the reasons for the Court's ruling on Det. Frye's motion to intervene; it will promote the public's perception of the legitimacy of these proceedings and the fairness by which all participants are treated, including those who challenge powerful government actors.

Det. Frye attempts to downplay the public's interest in the Exhibits by suggesting that they "will undoubtedly become available to the public through pleadings or cross examination of Detective Frye in open court." (*See* Ex. A at 3.) Det. Frye's argument actually undermines his sealing request. If, as Det. Frye contends, disclosure is inevitable, then the Exhibits should not be sealed in the first instance. Det. Frye's inevitable disclosure argument ultimately fails, however, because there is no guarantee that there will be any future proceedings during which the Exhibits might become public. As the Court observed in its order denying Det. Frye's motion to intervene, "a full opportunity will be presented to address the merits of any issues raised . . . *should* this disclosure [of potential impeachment evidence] result in reopening any of the cases based upon the investigation *yet to be conducted* by the Federal Public Defender and other

9

counsel." (*See* Order, Dkt. No. 55, at 3) (emphasis added).  It is for precisely this reason – the absence of a guaranteed public trial – that courts have recognized the public's right of access to pretrial proceedings and records. *See Richmond Newspapers, Inc. v. Com.*, 222 Va. 574, 587, 281 S.E.2d 915, 922 (1981) ("[T]he public's interest in the conduct of the judicial system may be even more acute when pretrial hearings are involved." (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 434 (1979) (Blackmun, J., concurring and dissenting)).  Thus, the public's interest in accessing the Exhibits remains compelling, notwithstanding Det. Frye's inevitable disclosure argument.

> C.   **The Court Should Order the Redaction of Personal Identifiers And Other Information Prohibited By Law From Public Disclosure.**

Having assumed that the First Amendment standard was inapplicable, Det. Frye offers no alternatives to complete sealing. *See In re Washington Post Co.*, 807 F.2d at 392 (First Amendment requires proponent of sealing to demonstrate that there are no alternatives to closure that would adequately protect that compelling interest.").  The Newspaper acknowledges that the rules prohibit the public filing of certain information, such as Social Security numbers and Tax Identification numbers, and that such information should be redacted before the Exhibits are made open to the public. *See* Fed. R. Crim. P. 49.1.  Nothing in Det. Frye's pleading suggests any additional information should be redacted.  Should the Court take it upon itself to review the Exhibits through the lens of public access and determine that privacy interests not articulated by Det. Frye are implicated, the Newspaper requests that the Court allow the Newspaper an opportunity to consider and respond to such concerns, while ordering the immediate release of the Exhibits with redactions consistent with the Court's concerns.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Newspaper respectfully requests that its petition for leave to intervene be granted; that Det. Frye's motion to seal be denied; that the Exhibits be released publicly and as expeditiously as possible; and that the Court award any additional relief that it deems fair and just.

Dated: June 11, 2018.                                  Respectfully Submitted,

BH MEDIA GROUP, INC.,
Publisher of *The Roanoke Times*

By Counsel

/s/ David B. Lacy
Craig T. Merritt (VSB No. 20281)
David B. Lacy (VSB No. 71177)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Tel.:   (804) 697-4100
Fax:   (804) 697-4112
cmerritt@cblaw.com
dlacy@cblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of June, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

 /s/ David B. Lacy
David B. Lacy (VSB No. 71177)
dlacy@cblaw.com
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Tel.:   (804) 697-4100
Fax:   (804) 697-4112

#2330334